Date signed February 19, 2006



E. STEPHEN DERBY
U. S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Baltimore

| | | |
|---|---|---|
| IN RE: | * | |
| WILLIAM LAWTON McCOSKEY, | * | Case No. 04-37721-SD |
|    Debtor. | * | Chapter 7 |
| * * * * * * * | | |
| | * | |
| ROBERT FLEMING, | * | |
|    Plaintiff, | * | |
| vs. | * | Adversary No. 05-1267-SD |
| WILLIAM LAWTON McCOSKEY, | * | |
|    Defendant. | * | |

MEMORANDUM GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff filed the instant adversary complaint against Defendant requesting a determination that a default judgment and an award for punitive damages from a Maryland circuit court are not dischargeable under 11 U.S.C. § 523(a). Plaintiff has moved for summary

1

judgment, relying on the principles of collateral estoppel to allege that all material issues of fact were decided as a result of the default judgment.  For the reasons set forth hereafter, Plaintiff's motion will be granted.

## I. STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c) (2005), made applicable by Fed. R. Bankr. P. 7056 (2005).  Summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242 (1986).   While the Court must construe all inferences in favor of the non-moving party, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255, the court is bound by factual determinations made in prior actions where collateral estoppel applies. *Ramsey v. Bernstein (In re Bernstein),* 197 B.R. 475, 479 (D. Md. 1996), *citing Allen v. McCurry,* 449 U.S. 90, 94-5, (1980).

## II.  ADMISSIBILITY OF DOCUMENTS

The facts relied on by Plaintiff herein are based solely on the Circuit Court order denying Defendant's improper venue motion, the Circuit Court Notice of Default, and Order and Memorandum Opinion of the Honorable Raymond Beck.  A public document "bearing a seal purporting to be that ... of any State ... or of a political subdivision, department, officer, or agency, thereof, and a signature purporting to be an attestation or execution" is self-authenticating and is admissible as evidence.  Fed. R. Evid. 902(1).  Additionally, the documents are deemed admissible pursuant to Fed. R. Civ. 37 because the Defendant has stipulated to their genuineness.

III. BACKGROUND

The Defendant, William Lawton McCoskey, is a debtor under Chapter 7 of the Bankruptcy Code. (Case No. 04-37721-ESD). Plaintiff, Robert Fleming, seeks a determination of dischargeability of debt pursuant to 11 U.S.C. §§ 523(a)(2), (a)(4), (a)(6). On July 6, 2005, the Plaintiff propounded a request for Admission of Facts and Genuineness of Documents to the Defendant. The Defendant admitted to the genuineness of the Notice of Recorded Judgment dated August 3, 2002 (Request No. 33) and the genuineness of the Memorandum Opinion and Order dated September 16, 2002 (Request No. 35). The facts surrounding the Circuit Court Judgment and Memorandum Opinion are as follows.

On October 17, 2001, Plaintiff filed suit against the Defendant in the Circuit Court for Carroll County, Maryland, alleging breach of contract, intentional misrepresentation, tort arising from breach of contract, unfair and deceptive trade practices and improper automotive repair. (Pl. Mem. Summ. J.). The Defendant was served with a Writ of Summons and Complaint on December 9, 2001, at 3085 Mangus Mill Road, Taneytown, Maryland. *Id.* On December 18, 2001, the Defendant filed a Motion to Dismiss alleging incorrect venue. *Id.* The Defendant claimed that he was not a legal resident of Carroll County, Maryland, that he was not operating a business in Carroll County, Maryland, and that he had no relationship at all to Carroll County, Maryland. *Id.* On January 11, 2002, the Circuit Court for Carroll County denied the Defendant's motion.

The Defendant never responded with an answer to the complaint. On February 14, 2002, upon request of the Plaintiff, the Circuit Court entered an Order of Default. The order permitted the Defendant to move to vacate the Order within 30 days of its entry. A hearing was scheduled for April 19, 2002, in the Circuit Court that was subsequently continued to August 2, 2002.

The Defendant failed to respond to the Order of Default and failed to appear before the Circuit Court. As a result, the Court heard *ex parte* proof of damages and entered judgment in favor of the Plaintiff and against the Defendant in the amount of $34,700.00.

Upon a memorandum submitted by the Plaintiff, on September 16, 2002, the Honorable Raymond E. Beck, Sr., Judge of the Circuit Court for Carroll County, also entered his Memorandum Opinion and Order awarding the Plaintiff punitive damages in the amount of $50,000.00, together with attorney's fees in the amount of $3,022.78. In the Memorandum Opinion that accompanied the punitive damages order, The Honorable Raymond E. Beck Sr. made the following findings:

> . . . The vehicle, as evidenced by pictures provided at trial, was in excellent and in running condition when the Plaintiff drove it to the Defendant's place of business, "From Rust to Riches", so that it could be fully restored to showroom condition. The Plaintiff was told by the Defendant that it would cost $15,000 to complete the requested restoration.
>
> Over the course of four years, the Plaintiff received several reports via E-mail indicating that the car was progressing well. By January 2001, the Plaintiff having paid to the Defendant the sum of $14,000 and wondering whether the work was nearing completion, sent an agent to the Defendant's business to determine the status of the vehicle. The agent found the car in a state of complete disrepair, with some parts missing, and others completely rusted. Before and after pictures of the car, which were admitted into evidence during the hearing, show that the car was, in essence, completely destroyed.
>
> . . . The estimates indicate that it would cost $5,300 to restore the interior of the car and an additional $15,400 to restore the remainder of the car to showroom condition. . . . The Plaintiff paid $2,000 to have pieces of his car removed from the Defendant's business into a storage locker. Fees for use of the storage locker totaled $2,550. The Plaintiff has paid $9,300 in taxi and rental car fees from January 2000 to present.
>
> . . . This Court rules in favor of the Plaintiff on Count I Intentional Misrepresentation and awarded $34,700 in compensatory damages and reserved on the issues of punitive damages and attorney's fees.
>
> Defendant] told elaborate lies regarding the status of certain repairs and gave detailed accounts of the places to which he supposedly sent parts for cleaning and repair. . . . The Court has no doubt that the Defendant made these

>representations, knowing that they were false. . . . Without testimony from the Defendant it is impossible for the Court to determine whether the Defendant intended to complete the work for which he contracted and simply abandoned it, lying to the Plaintiff to cover his bad actions or whether he entered into the contract from the beginning solely to scam the Defendant, lying in order to keep the money coming in. . . . The courts have a public policy interest in deterring this kind of destruction of personal property under either scenario. . . . Therefore, the Court finds actual malice on the part of the defendant and punitive damages are warranted in this case.

(Circuit Court Memorandum Opinion). Plaintiff now presses a motion for summary judgment arguing that the facts necessary to prove the claims under §§ 523(a)(2), (a)(4), (a)(6) have been decided by the Circuit Court and the Defendant is precluded from relitigating them under the doctrine of collateral estoppel.

### III. Discussion

a. *Collateral estoppel.*

In *Grogan v. Garner,* 498 U.S. 279, 284 (1991), the Supreme Court concluded explicitly that principles of collateral estoppel apply in dischargeability proceedings in bankruptcy. When "determining the preclusive effect of a state court judgment, the federal courts must, as a matter of full faith and credit, apply the forum state's law of collateral estoppel." *Pahlavi v. Ansari (In re Ansari),* 113 F.3d 17, 19 (4th Cir. 1997). "Congress has specifically required all federal courts to give preclusive effect to state court judgments whenever the courts of the State from which the judgments emerged would do so." *Id. Quoting Hagan v. McNallen (In re McNallen),* 62 F.3d 619, 624 (4th Cir. 1995). Thus, the court must look to the law of Maryland to determine whether collateral estoppel applies to the Circuit Court judgment.

Collateral estoppel, otherwise known as issue preclusion, bars the relitigation of an issue that was actually litigated and necessarily decided in a prior court. *Nationwide Mut. Ins. Co. v. Webb*, 44 Md. App. 547, 553 (Md. Ct. Spec. App. 1980) (reversed in part on other grounds). While the generally accepted view is that no issues are actually litigated in a default judgment,

5

Maryland courts have consistently held that default judgments deserve the preclusive effects of any other judgment. *Id.*

> The "public policy" bar even extends to cases concluded by default judgments wherein the issue could have been litigated. Although obviously not "litigated," issues determined by default judgment are nonetheless conclusive. *See Glens Falls Ins. v. Amer. Oil Co.*, 254 Md. 120 (1969)….
>
> A judgment by default, while it may require extension by way of proof of damages… is still final in respect of the question of the liability of the party against whom it is obtained. (internal citations omitted). Like every other judgment, it is conclusive of every fact necessary to uphold it. (internal citations omitted). This Court cannot go behind the judgment by default to examine into and determine upon the validity of the cause of action upon which suit is instituted.

*Id.* at 453-455.  Later, the Maryland Court of appeals reiterated this view:

> In Maryland a default judgment is considered more akin to an admission of liability than to a punitive sanction. In *Hopkins v. Easton Nat'l Bank*, 171 Md. 130, 134, 187 A. 874, 876 (1936), this Court said that a default results in "the tacit admission by the defendant in default of the truth of the allegations of the bill of complaint as they are averred." In *Pacific Mortgage & Inv. Group, Ltd. v. Horn*, 100 Md. App. 311, 332, 641 A.2d 913, 923 (1994), the Court of Special Appeals stated that "[a] judgment by default constitutes an admission by the defaulting party of its liability for the causes of action set out in the complaint." And finally, in *Gotham Hotels, Ltd. v. Owl Club, Inc.*, 26 Md. App. 158, 173, 337 A.2d 117, 125 (1975), the court held that "failure to plead . . . constituted an admission . . . of liability for the cause of action set forth in the declaration."

*Porter Hayden Co. v. Bullinger*, 350 Md. 452, 472 (Md. 1998).  Consequently, under Maryland law, the issues on which the default judgment and order for punitive damages are predicated, are deemed conclusively decided.

While this conclusion appears draconian at first glance, it is consistent with recent Fourth Circuit precedent.  In *Pahlavi, supra*, the court found that, because the law of the state where the original litigation occurred controlled the preclusive effect of the state's judgments in federal court, and because Virginia law allowed collateral estoppel in default judgments, plaintiffs' compensatory damage award was nondischargeable.  The court rejected defendant's argument that the parties never "actually litigated" defendant's fiduciary status, or whether a defalcation

6

occurred because the Virginia judgment was a default judgment. *Pahlavi,* 113 F.3d at 21. The Court then went on to distinguish its holding from its previous holding in *In re Raynor*, 922 F.3d 1146 (4th Cir. 1991). The Court stated in pertinent part:

> Critical differences distinguish this case from Raynor. First, and most obviously, while Virginia law governs this case, North Carolina law controlled in Raynor. North Carolina, unlike Virginia, has never rejected the majority view stated in the Restatement that [a] default judgment cannot be used for collateral estoppel purposes, because no issues are actually litigated. [internal citations omitted]. Indeed, examination of the briefs in Raynor indicates that no party suggested that North Carolina's law of collateral estoppel differed from the principle set forth in the Restatement. Furthermore, even if Virginia law had been applicable in Raynor, it is not at all clear that the result there would have been different. This is so because in Raynor, unlike the case at hand, the parties engaged in literally no litigation on the issue of fraud.

*Pahlavi,* 113 F.3d at 22. The prior judgment in the case at hand was obtained from the Circuit Court for Carroll County, Maryland. Thus, as noted above, Maryland collateral estopppel principles apply to determine whether the Defendant is precluded from relitigating any pertinent issues. As expounded on above, Maryland law gives preclusive effects to default judgments. More critically, Maryland law gives preclusive effects to any issue that could have been litigated and that underlies the default judgment.

The facts in the instant case indicate that no injustice will occur if collateral estoppel is applied. First, the Defendant received actual notice of the complaint. He filed a motion disputing venue.[1] Subsequently, the Defendant voluntarily failed to participate in the

---

[1]It is important to note that the Defendant's motion to dismiss was based solely on improper venue and did not raise any issues regarding the Circuit Court's personal jurisdiction. Moreover, a review of the record from the Circuit Court proceeding does not raise any question that the Circuit Court for Carroll County properly exercised personal jurisdiction over the Defendant. Indeed the record shows that the Defendant resides at 3085 Menges Mill Road, Taneytown, Maryland 21787, which is located in Carroll County, Maryland. Specifically, the affidavit of summons in the Circuit Court proceeding shows that the Defendant was served at the above address. More critically, the defendant has listed the same address as his primary residence in the current bankruptcy case. As a result, the potential argument, which the Defendant did not raise, that the Circuit Court did not have personal jurisdiction over the

proceeding. Although a default order was entered against him, the Defendant had thirty days to move to vacate the default order. Further, the Plaintiff, at a hearing, put forth evidence that the Court weighed when determining whether damages were appropriate.

At any time after receiving notice of the action until the Court issued its Memorandum Opinion, the Defendant could have participated in the case. Instead, he did not participate, although the Plaintiff properly framed an issue and presented it to the court. While the issues were presented at a damages hearing in front of a judge rather than at trial in front of a jury, "It would be unfair to permit a party to avoid the preclusive effect of an anticipated adverse decision merely by not appearing at the hearing or by not having a factual defense to present." *Bernstein, supra.* Indeed, Maryland courts have explicitly held that if issues necessary to a default judgment could have been litigated, then an adversely effected party is precluded from relitigating them. *See Glens Falls Ins. v. Amer. Oil Co.,* 254 Md. 120 (1969) (emphasis added).

The Defendant had every opportunity to defend himself in the Circuit Court. No explanation has been put forward as to why the Defendant failed to answer the complaint or to appear at the hearing. Consequently, under Maryland law, the issues underlying the default judgment and order for punitive damages are deemed conclusive, and the Defendant is precluded from relitigating them in this case.

b. *§ 523(a)*

    1. § 523(a)(6).

Section 523(a)(6) states:

> (a) A discharge under [this title]…does not discharge an individual debtor from any debt–
> > (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

---

Defendant when issuing the default judgment, is without merit.

11 U.S.C. § 523(a)(6) (2005). In *Kawaauha*u v. *Geiger*, 523 U.S. 57, 61-62 (1998), the

Supreme Court articulated:

> the word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.  Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury.."… the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts.  Intentional torts generally require that the actor intend "the consequences of an act," not simply "the act itself." Restatement (Second) of Torts § 8A, comment a, p. 15 (1964) (emphasis added).

*Id*.  Plaintiff argues that the factual findings by the Circuit Court are sufficient to prove both elements under Section 523(a)(6).  Accordingly, the Court must determine whether the issues decided by the Circuit Court, namely, the findings of actual malice for the purpose of awarding punitive damages, suffice to show that Defendant willfully and maliciously injured the Plaintiff in the sense required by Section 523(a)(6).

In a recent case the Maryland Court of appeals set forth the required showing to sustain an award of punitive damages.

> …Maryland law has limited the availability of punitive damages to situations in which the defendant's conduct is characterized by knowing and deliberate wrongdoing…. punitive damages may only be awarded in such cases when the plaintiff has established that the defendant's conduct was characterized by evil motive, intent to injure, ill will, or fraud, i.e., actual malice.  [internal quotation marks omitted]… we have discussed, the Maryland  cases concerning fraud or deceit have typically involved the form of the tort which is characterized by the defendant's deliberate deception of the plaintiff by means of a representation which he knows to be false. We believe that the defendant's actual knowledge of falsity, coupled with his intent to deceive the plaintiff by means of the false statement, constitutes the actual malice required to support an award of punitive damages.

*Ellerin*, 337 Md. at 228-229, 234-235 (Md. 1995).

9

While it is true that Judge Beck found actual malice on the part of the defendant when he granted punitive damages, the definition of that phrase under Maryland law differs from the "malicious injury" required under Section 523(a)(6). As discussed above, the words "willful or malicious" in the context of Section 523(a)(6), modify the word "injury." The Supreme Court in *Geiger*, *supra*, expressly rejected an interpretation that the words willful or malicious modify the conduct leading to the injury. By contrast, Maryland law infers actual malice from the "wrongful conduct," namely, the making of a false statement while knowing that it is false. Accordingly, the factual determinations necessary to assess punitive damages against the plaintiff in the Circuit Court differ from those mandated by Section 523(a)(6) to show "willful or malicious injury." Consequently, issues of material facts remain and Plaintiff's motion for summary judgment on this claim is denied.

2. § 523(a)(4).

Section 523(a)(4) states:

> (a) A discharge [under this title] does not discharge an individual debtor from any debt--
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

11 U.S.C. § 523(a)(4) (2005). Plaintiff fails to articulate why there is not an issue of material fact with respect to this claim. The facts decided by Judge Beck do not address: (1) whether Defendant was a fiduciary of the Plaintiff, (2) whether the Defendant embezzled funds from the Plaintiff, or (3) whether the Defendant committed larceny. Consequently, Plaintiff has not established that there is not a genuine issue of material fact as to each of these elements, and Plaintiff's motion for summary judgment on this claim will be denied.

3. § 523(a)(2).

Section 523(a)(2) states:

>    (a) A discharge under [this title] does not discharge an individual debtor from any debt--
>        (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by--
>      (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>      (B) use of a statement in writing--
>        (I) that is materially false;
>        (ii) respecting the debtor's or an insider's financial condition;
>        (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>        (iv) that the debtor caused to be made or published with intent to deceive; or
>      (c) (I) for purposes of subparagraph (A)--
>        (I) consumer debts owed to a single creditor and aggregating more than $500 for luxury goods or services incurred by an individual debtor on or within 90 days before the order for relief under this title are presumed to be nondischargeable; and
>        (II) cash advances aggregating more than $750 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within 70 days before the order for relief under this title, are presumed to be nondischargeable; and
>      (ii) for purposes of this subparagraph--
>        (I) the terms "consumer", "credit", and "open end credit plan" have the same meanings as in Section 103 of the Truth in Lending Act; and
>        (II) the term "luxury goods or services" does not include goods or services reasonably necessary for the support or maintenance of the debtor or a dependent of the debtor.

11 U.S.C. § 523(a)(2) (2005).  Because the Plaintiff does not specify which subsection under Section 523(a)(2) he is proceeding under, the court must address each separately.

Similar to Plaintiff's claim under Section 523(a)(4), the Plaintiff has failed to plead any facts that would entitle him to relief under Section 523(a)(2)(B).  Particularly, neither the pleadings nor the state court opinion provide any facts as to a statement in writing that misrepresented the financial situation of the debtor.  As a result, a material issue of fact remains and Plaintiff's motion for summary judgment on this claim will be denied.

By the same token, the Plaintiff has failed to demonstrate an absence of material fact with respect to the requirements enumerated under Section 523(a)(2)(c).  Again, the pleadings and the state court judgment are devoid of any factual assertions linking the Plaintiff's claim to

debt incurred pursuant to the narrow guidelines specified in subsection (c). As a result, the Plaintiff's motion for summary judgment on this claim will be denied.

The Court now turns to Plaintiff's claim under Section 523(a)(2)(A). In order to prevail, under this Section the plaintiff must show (1) a fraudulent misrepresentation; (2) that induces another to act or refrain from acting; (3) causing harm to the plaintiff; and (4) the plaintiff's justifiable reliance on the misrepresentation. *Foley & Lardner v. Biondo (In re Biondo),* 180 F.3d 126, 134 (4th Cir. 1999) *citing* Restatement (Second) of Torts § 525 (1976). The Plaintiff maintains that the Debtor is precluded from litigating the elements of Section 523(a)(2)(A) pursuant to the doctrine of collateral estoppel.

As noted above, the Defendant is precluded from litigating the issues underlying the Circuit Court Judgment. Thus, the court must next determine what issues the Circuit Court necessarily decided, i.e. what factual determinations were essential to support the judgment. Specifically, the court must determine whether the Circuit Court decided that the Defendant's liability was predicated on an intentional misrepresentation. Finally, the court must determine whether the Circuit Court's determinations satisfy the elements for the cause of action under 11 U.S.C. §523(a)(2)(A).

Under Maryland law, in order to show fraud by intentional misrepresentation a Plaintiff must show: (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation. *Ellerin v. Fairfax Sav. F.S.B.*, 337 Md. 216, 229-230 (Md. 1995); *Everett v. Baltimore Gas & Elec.*, 513 A.2d 882,

889 ( Md. 1986); *Martens Chevrolet v. Seney*, 439 A.2d 534, 537-538 (1982); *James v. Weisheit*, 367 A.2d 482, 484-485 (1977).

The factual determinations required to prove an objection to dischargeability pursuant to Section 523(a)(2) mirror those necessary to sustain a claim for intentional misrepresentation under Maryland Law. Both causes of action require that the malfeasor have made a false statement, that the malfeasor knew was false, that induces the Plaintiff to act or refrain from acting, and that caused the Plaintiff injury when he justifiably relied on the false statement. *Compare Ellerin* 337 Md. at 230; *Biondo,* 180 F.3d at 134.  Consequently, a factual finding that supports a judgment under Maryland law for intentional misrepresentation, is ample to sustain an objection to dischargeability pursuant to Section 523(a)(2)(A).

According to the Judgment and Memorandum Opinion, Judge Beck found that Plaintiff and Defendant entered into an agreement where the Defendant would restore Plaintiff's vehicle. While undergoing the repairs, in response to Plaintiff's repeated inquiries regarding the status of the vehicle, Defendant assured him that the repairs were well on there way.  Satisfied that the work was progressing, Plaintiff continued to transfer funds to the Defendant. Finally, when the Defendant refused to provide any details about the vehicle, Plaintiff sent an agent to obtain the vehicle and discovered it in complete disrepair. After making these factual findings, Judge Beck explicitly concluded that the Defendant either lied from the outset that he could repair the vehicle in order to induce the Plaintiff to pay funds or that he lied later regarding the status of the repair, in order to perpetuate the continuation of the Plaintiff's payments. Under either scenario, the Defendant, Judge Beck found, deceived the plaintiff about the status of the vehicle in order to induce the Plaintiff to transfer more funds. "The Court has no doubt that the Defendant made these representations knowing that they were false." (Circuit Court Memorandum). Additionally, at the damages hearing, the Plaintiff provided documentary evidence of the funds

he transferred to the Defendant in reliance on the Defendant's continuing misrepresentations that the repair of the vehicle was progressing timely, when in fact, the Plaintiff's vehicle was in a state of utter disrepair. Finally, Judge Beck found, that after Plaintiff regained possession of the vehicle, the damage caused by the Defendant exceeded $15,000.  Consequently, Judge Beck stated, that the default judgment was based on intentional misrepresentation.  Accordingly, the facts, as recited by Judge Beck, suffice to support an objection to dischargeability under 523(a)(2)(A), and the Defendant is precluded from relitigating them.

The Circuit Court bifurcated the debt into $34,700 in compensatory damages by recorded judgment dated August 3, 2002, $3,022.78 in attorney's fees and $50,000 in punitive damages via Memorandum and Order dated September 16, 2002.  In *Cohen v. De La Cruz*, 523 U.S. 213, 218-219 (U.S. 1998), the U.S. Supreme Court explicitly stated that all debts that arise from a cause of action under section 523(a)(2)(A) are nondischargeable, including punitive damages and attorney's fees. Consequently, the entire debt, from the recorded judgment dated August 3, 2002, in Case Number C-2001-34978 and the order for punitive damages entered September 16, 2002, in Case Number C-2001-34978 is nondischargeable.

## CONCLUSION

This court finds that the issues necessary to support the default judgment for intentional misrepresentation in the Circuit Court are ample to prove a cause of action under 11 U.S.C. § 523(a)(2)(A).  Moreover, the Court finds that these issues have been actually litigated and necessarily decided pursuant to Maryland law.  As a result, Defendant is precluded from relitigating these issues.  Accordingly, Plaintiff's motion for summary judgment requesting that Defendant's debt, as enumerated in the recorded judgment and punitive damages order, be deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), will be granted.

cc:   Fred A. Thompson, Esquire
      14418 Old Mill Road
      Suite 201
      Upper Marlboro, MD 20772

      Andrew Stone, Esquire
      237 East Main Street
      Westminster, MD 21157

      Joseph J. Bellinger, Trustee
      Ballard Spahr Andrews & Ingersoll, LLP
      300 East Lombard Street.
      18th Floor
      Baltimore, MD 21202- 3268

      William Lawton McCoskey
      3085 Menges Mill Road
      Taneytown, MD 21787

      Office of the U.S. Trustee
      101 W. Lombard Street, 2nd Fl.
      Baltimore, MD 21201

**END OF MEMORANDUM**